UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GENERAL SECURITY, INC.,

                          Plaintiff,

          v.                                    6:08-CV-927 (DNH-GHL)

APX ALARM SECURITY SOLUTIONS, INC.
and APEX ALARM, LLC.,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

NIXON PEABODY LLP                         JENA R. ROTHEIM, ESQ.
Attorneys for Plaintiff                   DANIEL J. HURTEAU, ESQ.
677 Broadway, 10th Floor                  LEAH R. THREATTE, ESQ.
Albany, New York 12207

HARRIS BEACH PLLC                         MICHAEL J. MASINO, ESQ.
Attorneys for Defendants
99 Garnsey Road
Pittsford, New York 14534


DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

        Plaintiff General Security, Inc. ("plaintiff") brings a diversity suit against

defendants APX Alarm Security Solutions, Inc. and Apex Alarm, LLC ("defendants").

Plaintiff seeks compensatory and punitive damages for tortious interference with

contract and business relations (claims 1 and 2), false representation in violation of §

43(a) of the Lanham Act (claim 4), product disparagement (claim 5), unfair competition

(claim 6), and slander (claim 7).  Plaintiff also seeks injunctive relief enjoining defendants from soliciting business from its customers through false statements and other misrepresentations (claim 3).  Defendants are represented by the same counsel and move to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff opposes and cross-moves for leave to amend its First Amended Complaint.  Defendants oppose plaintiff's cross-motion.  Oral argument was heard on August 14, 2009 in Utica, New York.  Decision was reserved.

## II. **BACKGROUND**

Plaintiff is a mid-size home security company with its principal place of business in Plainview, New York.  Plaintiff's business also includes home security services offered by one of its sub-divisions, Sentinel Security.  On August 10, 2007, plaintiff filed a lawsuit for tortious interference and injunctive relief in the Eastern District of Virginia in response to reports that the defendants were soliciting its customers in Richmond, Virginia.  Plaintiff's Virginia lawsuit was dismissed for lack of subject matter jurisdiction after failing to plead the specific citizenship of each member of the limited liability company (See Order, Ex. A to Defs'. Reply Aff., Dkt. No. 30-3.) Plaintiff filed its present lawsuit on August 27, 2008 and, with defendants' consent, filed an amended complaint on December 10, 2008.

The following factual allegations are accepted as true for purposes of defendant's Rule 12(b)(6) motion.  On or about May 10, 2007, one of plaintiff's customers in Richmond, Virginia, Lucy Scott, indicated she wished to cancel her contract with plaintiff because defendants had falsely informed her that plaintiff's system would not be operational beginning in January of 2008.  Although defendants'

employees also told Ms. Scott that they were merely upgrading plaintiff's home security equipment to ensure that it would function after January 2008, defendants had actually installed their own alarm system and removed plaintiff's hardware.

On or about May 16, 2007, defendants engaged in the same pattern of conduct with another of plaintiff's Virginia customers, Ruby Sykes.  Defendants informed Ms. Sykes that plaintiff's alarm system would cease operating in January 2008, told her they were only upgrading plaintiff's equipment, and replaced plaintiff's alarm system with their own equipment.

In August of 2008, defendant's representatives contacted Julie Frisillo, one of Sentinel Security's customers in Utica, New York.  Defendants told Ms. Frisillo that her home security system was no longer working properly, that they had purchased Sentinel Security, that Sentinel Security had "left town," and that the home of one of Sentinel Security's customers had recently been broken into whereupon burglars slit the throat of the customer's dog.  Defendants thereafter replaced the Sentinel Security alarm system with their own hardware.  However, after Ms. Frisillo later confronted defendants about the veracity of their statements, defendants agreed to reimburse her for the cost of removing her Sentinel Security equipment.

The following events are alleged to have occurred after December 10, 2008 and are stated for the first time within plaintiff's proposed second amended complaint (See Pl's. Second Proposed Am. Compl., Dkt. No. 29, ¶¶ 23-48).  From between May 13, 2009 and July 7, 2009, defendants' representatives contacted five of plaintiff's customers on separate occasions and misled each of them to believe, among other things, that burglars were cutting phone lines to circumvent plaintiff's alarm systems,

that the defendants were the only companies capable of installing cellular back-up
systems, that the defendants were working with local police, and, in one instance, that
their neighbor had recently been killed during a break-in because plaintiff's home
security system failed.  Due to these misrepresentations, each customer agreed to
replace plaintiff's home security equipment with defendants' alarm system.  Afterwards,
plaintiff incurred costs to re-install its alarm hardware.

## III.  DISCUSSION

### A.  Plaintiff's Cross-Motion to Amend its Complaint

Following service of the opposing party's answer, a plaintiff will be permitted
to amend its complaint when justice so requires.  See FED. R. CIV. P. 15(a)(2).  "Rule
15(a) of the Federal Rules of Civil Procedure instructs courts that leave to amend
should be freely given . . . " so long as the proposed amendment would not be futile.
City of New York v. Smoke-Spirits.com, Inc., 541 F.3d 425, 452 (2d Cir. 2008)
(citations omitted).  Whether leave to amend should be granted is within the discretion
of the trial court, and a number of factors may be considered, including undue delay,
bad faith, repeated failure to cure pleading defects with previous amendments, and
undue prejudice to the opposing party.  Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct.
227, 230 (1962).

Plaintiff was previously afforded one opportunity to amend its pleadings.  (See
Stipulation, Dkt. No. 14.)  Plaintiff's present cross-motion is therefore a third attempt to
plead factual allegations giving rise to the seven stated causes of action.  Plaintiff's
proposed amendments seek to include additional instances in which defendants
allegedly made misrepresentations to plaintiff's customers and a more particular

- 4 -

pleading of the damages plaintiff incurred as a result of defendants' actions. (See Pl's.

Proposed Second Am. Compl., Dkt. No. 29 ¶¶ 18, 23-51.)

The interest of justice warrants allowing plaintiff to amend its complaint to

include events alleged to have occurred after the filing of the first amended complaint.

To decide otherwise would unfairly bar plaintiff from recovering damages for events

that could not have been pled in the first amended complaint because those events

had not yet occurred.  With respect to the more particularized damages, defendants do

not point to any reason other than the fact that plaintiff was already afforded a prior

opportunity to amend its complaint in support of its argument to deny plaintiff's cross-

motion.  Defendants have not indicated how plaintiff's proposed second amended

complaint would result in undue prejudice or that it is the product of a dilatory motive.

Significantly, all but one of the instances in which plaintiff pleads more specific

damages relate to events which allegedly occurred after the filing of its first amended

complaint.  Therefore, in light of the decision to allow plaintiff to plead the additional

allegations which occurred after December 10, 2008, it logically follows that plaintiff

must also be permitted to plead the damages corresponding to those new factual

assertions.   Although it is a separate issue whether these damages are pleaded

sufficiently to state cognizable claims, plaintiff will be granted leave to amend and

defendants' motion to dismiss will be considered pursuant to the additional allegations

stated in plaintiff's proposed second amended complaint.

**B.  Defendants' Motion to Dismiss**

The allegations in the complaint are accepted as true when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  A cause of action will be dismissed for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  The Supreme Court warned against the literal interpretation of the phrase, "no set of facts," and explained that while the Court "do[es] not require heightened fact pleading of specifics," the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

Defendants move pursuant to Rule 12(b)(6) for dismissal of plaintiff's claims for tortious interference, product disparagement, unfair competition, and slander. Accordingly, plaintiff's claims for false representations in violation of § 43(a) of the Lanham Act and injunctive relief are not presently at issue.  Defendants contend that plaintiff has failed to plead sufficient facts to support its claims for unfair competition, product disparagement, and slander.  Additionally, defendants argue that the statute of limitations bars many of the factual allegations giving rise to plaintiff's claims for product disparagement, slander, and tortious interference.

**1.  Unfair Competition**

New York law recognizes two theories of unfair competition claims: (1) "palming off" and (2) misappropriation. ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, 476 (2007) (citing Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 567-68 (1959)).

"Palming off" constitutes the sale of one manufacturer's goods as the goods of another manufacturer, <u>ITC Ltd.</u>, 9 N.Y.3d at 476, whereas misappropriation theory stands for "the principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor. . . ." <u>Id</u>. at 477 (quoting <u>Electrolux</u>, 6 N.Y.2d at 567).  According to defendants, none of plaintiff's factual allegations fall within either theory of unfair competition under New York law.  Instead, defendants contend that plaintiff's allegations are limited to denigrating statements related to its home security systems.

Defendants concede in their memorandum of law that "[m]isappropriation also encompasses the rare scenario where one appropriates another's name as its own." (Defs'. Mem. of Law in Supp. of Mot. to Dismiss, Dkt. No. 27-5, at 4.) Accordingly, at a minimum, plaintiff states a cognizable claim for unfair competition to the extent it alleges defendants' representatives informed customers that they were merely upgrading plaintiff's existing home security equipment and, in one instance, that they had purchased plaintiff's subdivision, Sentinel Security. (<u>See</u> Pl's. Proposed Second Am. Compl., Dkt. No. 29, ¶¶ 15, 18, 20.)  If true, these allegations demonstrate that the defendants appropriated plaintiff's name or property for their own benefit by misleading customers to believe either that they were either updating plaintiff's product instead of replacing plaintiff's product altogether or that the customers should allow the defendants to install their alarm system because they had assumed control over plaintiff's customer accounts through the purchase of plaintiff's subdivision, Sentinel Security.  In either scenario, defendants are alleged to have unfairly capitalized on the use of plaintiff's name or property.

The remainder of plaintiff's allegations do not fall as neatly within the misappropriation theory for unfair competition claims.  While it is alleged that a number of customers were misled to believe either that the defendants had purchased Sentinel Security or that defendants were simply upgrading plaintiff's home security equipment, plaintiff omits these allegations for other customers identified in the proposed second amended complaint. (See id. at ¶¶ 23-49.)  Instead, the allegations of misconduct related to the remaining customers are limited to disparaging statements made by defendants' representatives regarding plaintiff's products and services. (See id.)

Plaintiff contends that defendants misappropriated the labor and skill employed in signing up these customers.  Put another way, plaintiff's argument is that defendants unfairly took advantage of the marketing efforts made to initially persuade home-owners to subscribe to plaintiff's home security services.  Although New York recognizes the misappropriation of one's property right or commercial advantage, see Flexitized, Inc. v. Nat'l Flexitized Corp., 335 F.2d 774, 781 (2d Cir. 1964), plaintiff does not cite any authority in support of its position that a company's prior acquisition of a customer constitutes a "property right" or "commercial advantage" for purposes of a common law unfair competition claim.  Rather, the misappropriation of a commercial advantage more commonly refers to a company's unfair use of a mark that is not otherwise protected under trademark law. See, e.g., ITC Ltd., 482 F.3d at 165; Flexitized, Inc., 335 F.2d at 781-82.  Therefore, defendants' motion to dismiss the unfair competition claim will be granted to the extent plaintiff does not allege any use of its name or property and will be denied to the extent defendants allegedly stated they

had purchased Sentinel Security and were merely upgrading plaintiff's security equipment.[1]

## 2.  Product Disparagement

Defendants move for dismissal of plaintiff's product disparagement claim on two separate grounds: first, they argue plaintiff fails to plead special damages arising from the allegedly disparaging statements as required under New York law; and second, that plaintiff does not allege sufficient facts to demonstrate malice.

In order to recover for product disparagement under New York law, a plaintiff "must show that the defendant published an oral, defamatory statement directed at the quality of a business's goods and must prove that the statements caused special damages." Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 59 (2d Cir. 2002) (citations omitted).  Additionally, the parties agree that malice must also be proven to sustain a claim for product disparagement. See Ruder & Finn Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 670-71 (1981).  With respect to the pleading of special damages, "the individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized." Fashion Boutique of Short Hills, 314 F.3d at 59 (citing Drug Research Corp. v. Curtis Publ'g Co., 7 N.Y.2d 435, 441-42 (1960)).  Notwithstanding this requirement, a plaintiff need not plead special damages if the disparaging statements "impeach the business methods or integrity of the plaintiff himself . . . [because t]he action would then qualify as slander

---

[1] To clarify, plaintiff has stated an unfair competition claim with regard to customers Scott, Sykes, and Frisillo.  All unfair competition claims related to other customers will be dismissed.

per se instead of trade libel." Angio-Medical Corp. v. Eli Lilly & Co., 720 F. Supp. 269, 274 (S.D.N.Y. 1989) (citing Drug Research, 7 N.Y.2d at 440).

The question presented is therefore whether the statements giving rise to plaintiff's product disparagement claim impeach plaintiff's business methods or integrity, and if not, whether plaintiff pleads special damages with sufficient particularity in its second amended complaint.  Plaintiff's product disparagement claim falls within the per se exception to the special damages pleading requirement to the extent plaintiff alleges that defendants' representatives misled one of its customers to believe that Sentinel Security "left town" in August of 2008. (See Pl's. Proposed Second Am. Compl., Dkt. No. 29, ¶ 20.)  If true, the defendants falsely denigrated plaintiff's integrity by suggesting that plaintiff would abandon its customers without either providing notice or implementing a plan for continuing the administration of its home security services. On the other hand, plaintiff's remaining factual allegations are limited to statements concerning the effectiveness of its products and services.  These remaining allegations include defendants' statements to customers indicating  that burglars were cutting phone lines to circumvent plaintiff's alarm systems, that the defendants were the only companies capable of installing cellular back-up systems, that the defendants were working with local police, and, in one instance, that their neighbor had recently been killed during a break-in after plaintiff's home security system failed.  Accordingly, only plaintiff's allegation that defendants misled one of its customers to believe plaintiff had left town falls within the per se exception to the special damages pleading requirement.

Whether the remaining allegations must be dismissed turns upon the particularity of the damages pleaded in plaintiff's second amended complaint.  Plaintiff must state the special damages with sufficient particularity so that defendants can identify the actual losses claimed as they relate to the allegedly defamatory statements. See Procter & Gamble Co. v. Quality King Distribs., Inc., 974 F. Supp. 190, 198 (E.D.N.Y. 1997) (citations omitted).  "'Round figures' or a general allegation of a dollar amount as special damages do not suffice." Id. (citing Matherson v. Marchello, 100 A.D.2d 233, 235, 473 N.Y.S.2d 998, 1001 (2d Dep't 1984)).  For example, the defendant's counterclaim for prima facie tort in Quality King Distribs., Inc. was dismissed despite naming the customers it lost as a result of the plaintiff's allegedly tortious acts because the defendant merely pleaded that it suffered damages "in the amount of at least $25 million . . . ." Quality King Distribs., Inc., 974 F. Supp. at 198. The court explained that the defendant did not meet the special damages pleading requirement because it "failed to itemize its losses [and] rather approximate[d] its damages in a round figure of approximately $25 million."

Here, plaintiff's second amended complaint includes allegations of the damages incurred from defendants' specific actions. (See Pl's. Proposed Second Am. Compl., Dkt. No. 29, ¶¶ 18, 22, 26, 32, 36, 40, 49, 51.)  Plaintiff alleges it suffered damages in the amount of 42 times the monthly monitoring fee of approximately $25 for each customer lost because of defendants' tortious actions.  Where plaintiff's home security equipment was removed but later re-installed after the customer renewed their subscription, plaintiff alleges it incurred damages of approximately $1400 except for one customer which resulted in lesser damages totaling approximately $500. (See id.

at ¶ 22.)  Although plaintiff's alleged damages are admittedly estimations rather than

particular figures, plaintiff nonetheless makes an attempt to itemize the damages for

each customer.  Plaintiff's pleadings are thus in stark contrast to those considered in

Drug Research where the New York Court of Appeals held that the plaintiff's general

allegation of damages totaling at least $5 million was not pleaded with sufficient

particularity to satisfy the special damages requirement.  7 N.Y.2d at 441.  As the Drug

Research court explained, "[s]uch round figures, *with no attempt at itemization*, must be

deemed to be a representation of general damages." Id. (emphasis added).  The

plaintiff in this case has attempted to itemize the specific damages incurred with

respect to the customers identified in its second amended complaint by providing

damage estimates for the cost of re-installing its home security equipment and for the

loss of revenue arising from canceled home security service subscriptions.  Although

plaintiff may eventually be required to provide evidence of more specific dollar

amounts, plaintiff states the damages resulting from defendants' allegedly disparaging

statements with sufficient particularity at this stage in the proceedings.

　　　　With regard to the issue of whether plaintiff has pleaded sufficient facts to

demonstrate that the defendants acted with malice, plaintiff must assert factual

allegations showing that the defendants either knew their statements were false, or

alternatively, acted with a reckless disregard for the truth. See Bose Corp. v.

Consumers Union of U.S., Inc., 466 U.S. 485, 502, 104 S. Ct. 1949, 1960 (1984); see

also De Marco-Stone Funeral Home, Inc. v. WRGB Broad., Inc., 203 A.D.2d 780, 781,

610 N.Y.S.2d 666, 668 (3d Dep't 1994) (citing Charles Atlas Ltd. v. Time-Life Books,

Inc., 570 F. Supp. 150, 154 (S.D.N.Y. 1983)).  Contrary to defendants' argument,

plaintiff pleads a number of allegations that exemplify a reckless disregard for the truth. These allegations include, but are not limited to, the following statements allegedly made by defendants' representatives: (1) that burglars slit the throat of a Sentinel Security customer's dog after breaking into the customer's home (Pl's. Proposed Second Am. Compl., Dkt. No. 29, ¶ 20); (2) that one of plaintiff's customers died during a break-in (id. at ¶ 25); (3) that defendants were working with local police (id. at ¶ 29); (4) that defendants' company was sent by local police to upgrade plaintiff's security system because homeowners in the area had experienced break-ins (id. at ¶ 41); and (5) that plaintiff's company was unable to provide cellular back up systems for its home security equipment. (Id. at ¶¶ 24, 33, 39.)  Assuming the accuracy of these allegations, defendants' statements exhibit a reckless disregard for the truth because of the inflammatory nature of the misrepresentations.  Many of their statements to customers could have easily been verified with local law enforcement, and in some cases, plaintiff's customers conducted their own cursory investigation only to learn that they had been misled by defendants' representatives. (See id. at ¶¶ 25, 39.)  Therefore, defendants' argument that plaintiff has pleaded insufficient facts to show malice is unpersuasive and defendants' motion to dismiss plaintiff's product disparagement claim will be denied.

### 3.  Slander

Defendants raise two arguments in support of their motion to dismiss plaintiff's slander claim: first, defendants assert the same argument with regard to the pleading of special damages for plaintiff's product disparagement claim; and second,

they contend plaintiff's second amended complaint is deficient for its failure to allege the precise words giving rise to the slander claim.

In order to properly plead its claim for slander under New York law, plaintiff must allege facts demonstrating: (1) that defendants made a false defamatory statement of fact; (2) that the statement was published to a third party; (3) that the statement concerned plaintiff; (4) that the defendant was responsible for making the statement; and (5) that the statement was slander per se or caused special damages. Albert v. Loksen, 239 F.3d 256, 265-66 (2d Cir. 2001).  Additionally, "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." N.Y.C.P.L.R. 3016(a) (McKinney 2009).

Defendants' argument as to the pleading of special damages must be rejected for the same reasons stated in connection with its motion to dismiss plaintiff's product disparagement claim.  With respect to the pleading of the precise words of the slanderous statements, plaintiff indisputably fails to plead direct quotations of the statements giving rise to its claim.  Consequently, the relevant issue is whether the omission of the specific language comprising the defamatory statements justifies the dismissal of plaintiff's slander claim under New York law.

Both plaintiff and defendants cite conflicting case law on the issue of whether New York law requires the plaintiff to plead the particular words forming a cause of action for slander. See, e.g., Cont'l Fin. Co. v. Ledwith, No. 08-CV-7272 (PAC), 2009 WL 1748875, at *7 (S.D.N.Y. June 22, 2009) (holding that "a complaint need not contain the exact words that constitute slander"); Caufield v. Imagine Advisors, Inc.,

No. 07-CV-1257 (DC), 2007 WL 4615504, at *10 (S.D.N.Y. Dec. 27, 2007) (holding that New York law requires a claim for slander to "set forth the defamatory words with particularity").  Although none of the parties cite controlling precedent, an independent review of case law within the Second Circuit also reveals contradictory holdings. Compare Reilly v. Natwest Mkts. Group, Inc., 181 F.3d 253, 271 (2d Cir. 1999) (holding that precise words need not be pled so long as the complaint provides notice sufficient to allow the defendant to defend itself) with Foltz v. Moore, McCormack Lines, 189 F.2d 537, 539 (2d Cir. 1951) (explaining that the slanderous words must be pleaded *in haec verba*).

Three years before the decision in Reilly, the Southern District of New York examined the requirement that a plaintiff plead the exact words from which its slander claim arises. See Sterling Interiors Group, Inc. v. Haworth, Inc., No. 94-CV-9216 (CSH), 1996 WL 426379, at *23 (S.D.N.Y. July 30, 1996).  The Sterling Interiors court explained that the Foltz rule was stated in *dicta* and had not since been restated by the Second Circuit. Id.  Most importantly, the court distinguished its case from the only two New York district court cases to cite the Foltz rule:

> [I]n both [of the prior] cases [citing Foltz], the plaintiff could reasonably be required to quote the allegedly slanderous material: in Herbert [v. Lando, 603 F. Supp. 983, 990 (S.D.N.Y. 1985)], the statements were made in a television program and subsequent magazine article, see 603 F. Supp. at 984; in Volvo [North America v. Men's Intern. Pro. Tennis Council, 687 F. Supp. 800, 815 (S.D.N.Y. 1988)], they were made to the press and presumably repeated in press reports. See 687 F. Supp. at 815.  Here, in contrast, the statements were allegedly made by Haworth *to third-party customers outside the presence of plaintiff*.  It is safe to assume that the substance of these statements, but not their exact wording, was revealed to plaintiff by the customers at some later time.

Sterling Interiors, 1996 WL 426379, at *23 (emphasis added).

Much like the plaintiff in <u>Sterling Interiors</u>, the plaintiff here brings a claim for slander arising from statements made by defendants' representatives to third-party customers outside plaintiff's presence.  Under these facts, requiring plaintiff to plead the exact words giving rise to its claim "would be asking the impossible" because it cannot "quote statements it did not hear or read directly . . . ." <u>Id</u>.  Accordingly, the more flexible pleading rule stated in <u>Reilly</u> should apply to plaintiff's slander claim, and defendants' motion to dismiss the claim should rise or fall upon whether plaintiff has alleged enough facts to afford defendants sufficient notice of the statements in order to defend themselves. <u>See</u> <u>Reilly</u>, 181 F.3d at 271.

Despite not pleading the precise words, plaintiff does identify the names of the customers to whom the statements were communicated, the time frame during which the statements were made, and most importantly, the message communicated to the third-parties.  Defendants have not provided any argument for why it would be overly difficult for them to check their internal records to learn which employees visited the identified customers on the dates stated in plaintiff's second amended complaint.  It logically follows that defendants could easily interview these employees in an effort to learn whether the representations alleged in the complaint were made and whether such representations were in fact false.  Therefore, where this information has been provided in relation to specific customers, defendants have been afforded sufficient notice so that they may defend themselves against plaintiff's slander claim.

Nevertheless, plaintiff's second amended complaint omits these same allegations for a number of customers it claims were lost due to defendants' statements. (<u>See</u> Pl's. Proposed Second Am. Compl., Dkt. No. 29, ¶¶ 50-51.)  With

respect to the majority of the customers identified in paragraph 50 of plaintiff's second amended complaint, plaintiff fails to plead any factual allegations related to the message communicated to these customers, the dates on which such messages were communicated, or whether the customers either cancelled their subscription or simply needed their equipment re-installed.  For the same reasons plaintiff has pleaded sufficient allegations related to the customers identified in paragraphs 17-49 of its second amended complaint, plaintiff does not afford the defendants adequate notice in order for them to defend themselves against the allegations related to the additional customers identified for the first time in paragraph 50.  Consequently, plaintiff makes sufficient allegations to support its claim for slander with respect to the following customers: Lucy Scott, Ruby Sykes, Julie Frisillo, Mickie and Vicki Hale, Johnna Lee, Deborah Wright, and Ellen Jefferson (see id. at ¶¶ 17-49);[2] however, plaintiff's claims are still subject to the applicable statute of limitations.

### 4.  Statute of Limitations

Defendants argue plaintiff's claims for product disparagement, slander, and tortious interference are barred by the statute of limitations.  The parties agree that product disparagement and slander claims are subject to a one year statute of limitations prescribed by New York CPLR § 215(3).  Accordingly, any defamatory

---

[2] Plaintiff's claim for slander will therefore be dismissed as to the following customers: Ernestine Cotton, Dawn Allen and Robert Lacy, Christopher McNeill, Rebecca Wiggins, Aubrey M. Gaines, Jr., Lauranette Napier, Donald and Rita Pennell, Christopher McCargo, Kate Mason, Mae Smith, Kay Rudy, Doris Bundy, Keith Coleman, Ninette and Randy Tompkins, Gracie and Joshua Booker, John Abrams, Martha Grandison, Geraldine Foster, Marie Sneed, Albert Davis, and Janie Taylor. (See Pl's. Proposed Second Am. Compl., Dkt. No. 29, ¶ 50.)  Additionally, plaintiff's product disparagement claim as to the same customers must likewise be dismissed for failure to allege a defamatory statement.  See supra section III.B.2; see also Fashion Boutique of Short Hills, 314 F.3d at 59 (2d Cir. 2002) (citations omitted) (holding that a plaintiff must allege a defamatory statement to state a viable product disparagement claim).

statements alleged to have been stated prior to August 27, 2007 cannot form the basis for plaintiff's product disparagement and slander claims.  Plaintiff is therefore barred from asserting product disparagement and slander claims related to statements allegedly made to customers Lucy Scott and Ruby Sykes because those customers were allegedly approached by defendants' representatives no later than May of 2007. (See Pl's. Proposed Second Am. Compl., Dkt. No. 29, ¶¶ 13-18.) The remainder of plaintiff's product disparagement and slander claims are timely pursuant to the one-year statute of limitations.

Notwithstanding this ruling, plaintiff may still assert factual allegations related to Ms. Scott and Ms. Sykes in connection with its claims for tortious interference of contract and business relations.  Although defendants concede that tortious interference claims in New York are subject to a three-year statute of limitations, see Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 92 (1993) (citing N.Y.C.P.L.R. 214(4)), they argue that plaintiff's causes of action for tortious interference are essentially restated claims sounding in product disparagement and slander and should therefore be subject to the applicable one-year statute of limitations for such claims.

In order to properly plead a claim for tortious interference under New York law, a plaintiff must allege "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." Finley v. Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996) (citations omitted).  Plaintiff alleges it had at one time held valid service agreements with its customers; that defendants were aware of its service agreements as evidenced by their references to

plaintiff's products, services, and reputation; that defendants made misrepresentations to its customers with the intention of persuading the customers to breach their service agreements; and as already discussed *supra*, that plaintiff suffered damages as a result of defendants' actions either in the form of a lost customer or the cost of re-installing its home security equipment.  Therefore, regardless of whether plaintiff's factual allegations overlap between the claims for slander and tortious interference, plaintiff has stated a viable claim for tortious interference and defendants' motion to dismiss plaintiff's claim as untimely will be denied.

## IV.  CONCLUSION

The interest of justice requires that plaintiff be granted leave to amend its first amended complaint pursuant to Rule 15(a)(2).  Most of plaintiff's proposed amendments state events alleged to have occurred subsequent to the filing of plaintiff's most recently amended complaint.  As a practical matter, it was impossible for plaintiff to plead these allegations, and it follows that plaintiff should be permitted to plead the more particularly stated damages flowing from these new allegations.

Plaintiff states a viable claim for unfair competition to the extent it alleges that defendants misled its customers to believe they were merely upgrading plaintiff's home security equipment or that they had purchased plaintiff's subdivision, Sentinel Security. In both of these instances, defendants took unfair advantage of plaintiff's name or property.  However, plaintiff's remaining allegations are limited to defendants' disparaging statements about plaintiff's products or services and therefore cannot form the basis of an unfair competition claim.

Plaintiff pleads with sufficient particularity special damages in support of its product disparagement and slander claims. Although plaintiff only provides estimations of the damages incurred, it does attempt to separate the monetary losses associated with individual customers depending upon whether each customer's account was lost altogether or only needed to be renewed after plaintiff's equipment was re-installed. Plaintiff therefore alleges more than simply a round figure amount of general damages and satisfies the special damages pleading requirement for its product disparagement and slander claims.

Plaintiff also pleads with sufficient particularity the allegedly defamatory statements made by defendants' representatives to several of plaintiff's customers. Although some case law supports defendants' position that the precise words forming the defamatory statements must be pleaded in the complaint, plaintiff cannot be expected to directly quote the language used by defendants' employees because the statements were made to third-party customers and were not recorded. Additionally, plaintiff makes enough allegations to provide defendants sufficient notice so that they may investigate the claims and defend themselves, and most importantly, plaintiff states the message of the allegedly defamatory communication that was published to its customers. Nevertheless, plaintiff does not make adequate allegations related to the customers identified for the first time in paragraph 50 of the second amended complaint, see supra n.2, and therefore plaintiff's claims for product disparagement and slander must be dismissed as to these customers.

Plaintiff also pleads sufficient facts to show that defendants' acted with malice when making various misrepresentations to plaintiff's customers. If true, the allegation

that some of plaintiff's customers were able to uncover the falsity of defendants'

statements after only a superficial inquiry demonstrates, at a minimum, that defendants

acted with a reckless disregard for the truth.

Finally, plaintiff states a cognizable claim for tortious interference and is

therefore entitled to the three-year statute of limitations under New York law.  The fact

that some of plaintiff's other claims arise from the same factual allegations from which

its tortious interference claim is based does not bar plaintiff from bringing separate

causes of action.

Accordingly, it is

ORDERED that

(1) Plaintiff's cross-motion to amend its first amended complaint is GRANTED;

(2) Defendants' motion for dismissal is GRANTED as to the following claims

and these claims are DISMISSED:

(a) claims for unfair competition resulting from defendants'

solicitation of customers Ernestine Cotton, Dawn Allen and Robert Lacy,

Christopher McNeill, Rebecca Wiggins, Aubrey M. Gaines, Jr., Lauranette

Napier, Donald and Rita Pennell, Christopher McCargo, Kate Mason, Mae

Smith, Kay Rudy, Doris Bundy, Keith Coleman, Ninette and Randy

Tompkins, Gracie and Joshua Booker, John Abrams, Martha Grandison,

Geraldine Foster, Marie Sneed, Albert Davis, Janie Taylor, Mickie and Vicki

Hale, Johnna Lee, Deborah Wright, and Ellen Jefferson; and

(b) claims for product disparagement and slander resulting from

defendants' statements made to customers Ernestine Cotton, Dawn Allen

and Robert Lacy, Christopher McNeill, Rebecca Wiggins, Aubrey M. Gaines, Jr., Lauranette Napier, Donald and Rita Pennell, Christopher McCargo, Kate Mason, Mae Smith, Kay Rudy, Doris Bundy, Keith Coleman, Ninette and Randy Tompkins, Gracie and Joshua Booker, John Abrams, Martha Grandison, Geraldine Foster, Marie Sneed, Albert Davis, and Janie Taylor, Lucy Scott, and Ruby Sykes, see *supra* n.2;

(3) Defendants' motion for dismissal as to the following claims is DENIED:

(a) claims for unfair competition resulting from defendants' solicitation of customers Lucy Scott, Ruby Sykes, and Julie Frisillo;

(b) claims for slander and product disparagement resulting from defendants' statements made to customers Julie Frisillo, Mickie and Vicki Hale, Johnna Lee, Deborah Wright, and Ellen Jefferson; and

(c) all claims for tortious interference;

(4) The Clerk of the Court is directed to file plaintiff's Proposed Second Amended Complaint (Dkt. No. 29) as the Second Amended Complaint and defendants have 20 days to file their answer to the remaining claims in the Second Amended Complaint.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 25, 2009
        Utica, New York